IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| OXFORD FEDERAL, LLC, )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE UNITED STATES, )<br>)<br>Defendant. ) | No. 23-288<br>(Judge Meriweather) |

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE REGARDING
<u>ISSUANCE OF LETTER OF REQUEST</u>**

Pursuant to Rule 7.2 of the Rules of the United States Court of Federal Claims (RCFC), Plaintiff, Oxford Federal, respectfully submits this reply in further support for the issuance of a Letter of Request (ECF 49).

The only area of disagreement between the parties involves the scope of the desired Letter of Request. Defendant does not oppose Plaintiff's request for documents within the custody, control, or possession of the Israeli Ministry of Defense (MOD) pertaining to the terminated contract, referred to as Ramon, which is the subject of the above-captioned litigation. *See* ECF 52 at 1. Where the parties diverge is whether the Letter of Request should provide for the MOD's production of documents related to two other projects, referred to as Nevatim and Navy Kitchen,[1] respectively. Plaintiff was performing Nevatim and Navy Kitchen contemporaneously with Ramon, all of which were terminated by the same U.S. Army Corps of Engineers (USACE) contracting officer.

---

[1] In the Letter of Request, Navy Kitchen is referred to as "Tira." See ECF 49-1 at 6.

Plaintiff believes the Letter of Request should include the provision of MOD documents pertaining to Nevatim and Navy Kitchen of the same scope and character as the MOD documents requested for Ramon. ECF 49-1. Defendant maintains that permitting Plaintiff to seek information from the MOD regarding Nevatim and Navy Kitchen "would license sweeping discovery into irrelevant matters." ECF 52 at 2. As explained below, Defendant's position lacks merit.

## ARGUMENT

I. Defendant Lacks Standing to Oppose Request for Documents from the Israeli Ministry of Defense Pertaining to Nevatim and Navy Kitchen

"Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena." *U.S. v. Gordon*, 247 F.R.D. 509 (E.D. NC 2007); *Black v. DNMO, LLC*, 2018 WL 488991 *2 (E.D. La. Jan. 19, 2018)("in order to challenge the subpoena, the movant must: be in possession or control of the requested material; be the person to whom the subpoena is issued; or have a personal right or privilege in the subject matter of the subpoena); *Silverstone Holding Group, LLC v. Zhongtie Dacheng (Zhuhai) Investment Management Co., Ltd.*, 650 F.Supp.3d 199, 202 (S.D.N.Y. 2023)("a non-recipient 'lacks standing to challenge subpoenas issued to non-parties on the grounds of relevancy or undue burden'") (internal citation omitted); *Piercy v. Wilhelmi*, 2016 WL 9176539 *2 (S.D. Ill. June 17, 2016) ("As a general rule, a party can move to quash a subpoena issued to a nonparty only if the party has a claim of privilege, privacy, or other personal right with regard to the documents sought"); *Singletary v. Sterling Transport Co., Inc.*, 289 F.R.D. 237, 239 (E.D. Va. 2012)( "Ordinarily, a party does not

have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena").

Although a Letter of Request is not a subpoena, the issue is analogous and the same principles as to standing to object to a non-party subpoena should apply. Here, Defendant claims no right or privilege in the information being sought from the MOD with respect to Nevatim and Navy Kitchen. Accordingly, Plaintiff lacks standing to challenge the Letter of Request. *See Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11 CIV. 1590 LTS HBP, 2013 WL 57892, at *5 (S.D.N.Y. Jan. 4, 2013) ("A party lacks standing to challenge subpoenas issued to non-parties on the grounds of relevancy or undue burden.").

II. Defendant Cannot Claim the Scope of the Letter of Request is Overly Burdensome to the MOD

Defendant's opposition suggests, in part, that the request for documents related to Nevatim and Navy Kitchen is overly burdensome to the MOD. ECF 52 at 2. To the extent Defendant makes such a claim as to Nevatim and Navy Kitchen, Defendant lacks standing.

In *Kansas City Power & Light Co. v. United States*, the plaintiff claimed, *inter alia*, the government's subpoena to non-party insurer, AEGIS, was overly burdensome. 132 Fed. Cl. 28, 41-42 (2017). Relatedly, the plaintiff claimed that it had a privilege-interest in the documents requested for production from AEGIS. *Id.*, at 44. The defendant challenged both assertions. As to the claim that the third-party subpoena was overly burdensome to AEGIS, the defendant argued that the plaintiff "[did] not contend that it has standing to raise undue burden in response to a third-party subpoena." *Id.*

The court agreed with the defendant, finding the plaintiff lacked standing to assert a claim that the subpoena was overly burdensome to a non-party. *Id.*, at 44-45.  As an initial matter, the plaintiff had not yet established right or privilege in the information sought from the non-party.  *Id.* (citing cases).  Furthermore, the court determined that even if plaintiff had established standing, it could not challenge the subpoena on the grounds of undue burden to the non-party.  *Id.* (*citing Pub. Serv. Co. of Okla. v. A Plus, Inc.*, No. CIV-10-651-D, 2011 WL 691204, at *5 (W.D. Okla. Feb. 16, 2011) ("Even if a party has standing to challenge a subpoena directed to a third party on privacy or privilege grounds, he may not challenge that subpoena on the grounds that the information imposes an undue burden on the subpoenaed party").

Like the plaintiff in *Kansas City Power & Light*, irrespective of whether Defendant asserts a right or interest in the documents requested from the MOD (it does not), Defendant cannot claim that the production of the requested documents would be unduly burdensome to the MOD.  Thus, Defendant lacks standing to oppose the scope of the Letter of Request on that basis.

Defendant's reference to *DBMS Consultants Ltd. v. Computer Associates Intern., Inc.*, 131 F.R.D. 367 (D. Mass. 1990) is similarly unhelpful to Defendant's contention because that matter, while it involved a letter rogatory request, dealt with a request that, if granted, would have entailed the parties traveling to Australia to take an oral deposition "when a simpler procedure may yield the desired information." *Id.*, at 370.  Finding that before the substantial resources of the parties and the two countries' courts were brought to bear for oral depositions in Australia, the court determined that the requesting party "first attempt to obtain the information it seeks from [a non-party] by taking [his] deposition on written questions as provided for under Fed.R.Civ.P. 31." *Id.*

4

Here, Plaintiff's application does not involve the expense and burden of traveling *anywhere*. Instead, Plaintiff simply asks that the MOD produce documents relevant to whether the MOD internally voiced concerns, and raised questions, over the contracting officer's administration of these projects that are relevant to Plaintiff's assertion that the contracting officer demonstrated a pattern of bad faith in the administration of Plaintiff's contracts (this pattern included Nevatim, Navy Kitchen, and Ramon). Significantly, unlike the situation in *DBMS Consultants Ltd.*, there is no "less expensive and less burdensome" manner available to Plaintiff by which it can obtain the requested information, as this information rests exclusively within the custody, control, and possession of the MOD.

### III. The Information Plaintiff Requests from the MOD is Relevant to Allegations of the Contracting Officer's Bad Faith

Assuming *arguendo*, that Defendant claims a right or interest in MOD documents related to Nevatim and Navy Kitchen for purposes of standing, Defendant cannot establish that these documents are irrelevant to the Plaintiff's defense of bad faith to USACE's termination action. Accordingly, Defendant's opposition to the scope of the Letter of Request lacks merit.

"Relevancy for the purposes of Rule 26 is broadly construed." *Katz v. Batavia Marine & Sporting Supplies, Inc.,* 984 F.2d 422, 424 (Fed.Cir.1993). "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." RCFC 26(b)(1); *see also Utility Construction Company, Inc. v. United States*, 2024 WL 3405995, at *1 (Fed. Cl. July 12, 2024). And so, the court should focus on the specific claim or defense alleged in the pleadings. *System Fuels, Inc. v. U.S.*, 73 Fed. Cl. 206, 215 (2006)(internal citations omitted). And while a fact must be relevant to a specific claim or defense asserted in the

pleadings to be a proper subject for discovery, the fact itself does not need to be alleged in the pleading. *Id.*

As our motion demonstrated, the complaint plausibly alleged that USACE's administration and termination of Plaintiff's Ramon project was undertaken in bad faith, and reflective of an intent to injure Plaintiff. (ECF 43, at ¶¶ 67-171). Relevant to the scope of the subject Letter of Request, Plaintiff alleged that the contracting officer's administration of the contracts for Nevatim, Navy Kitchen, and Ramon "was in furtherance of a coordinated and programmatic assault on the Plaintiff designed to injure Oxford by putting the company out of business in Israel or anywhere within the jurisdiction of [USACE's] Europe District." *Id.*, at ¶ 82. In the desired Letter of Request, Plaintiff included the below explanation as to why certain MOD documents involving Nevatim and Navy Kitchen relate to Plaintiff's bad faith allegations:

> As noted above, Plaintiff has alleged that USACE acted in bad faith in its dealings with Plaintiff. These allegations involve USACE's conduct concerning this project as well as two other projects that Plaintiff was performing in Israel at the time. These other projects include (1) Contract No. W912GB18D0032 / Delivery Order No. W912GB20F0134, DB Central INF Northern Cooking Plant, Israel ("Tira") and (2) Contract No. W912GB18D0032/Task Order W912GB21F0023 Site 13780 & 13699 - Nevatim Air Force Base, Israel ("Nevatim"). Both of these projects were also terminated by USACE. Those termination actions, as alleged by Plaintiff, were carried out as part of a plan to injure Plaintiff. As told by Plaintiff, the termination of the subject project was the culmination of USACE's efforts to harm Plaintiff financially. Accordingly, this Court is requesting that the MOD produce the same scope and character of documentation related to the Tira [Navy Kitchen] and Nevatim projects as this Court has requested be produced for the Ammunition Storage Facility at Ramon Air Force Base.

ECF 49-1 at 6.

Defendant's opposition does not take issue with this summary description of Plaintiff's allegations of bad faith underlying the three projects; instead, Defendant's objection is premised

on the administration and terminations of Nevatim and Navy Kitchen being irrelevant to the administration and termination of Ramon.  Specifically, Defendant asserts that "Oxford's view that it should be allowed discovery into its other contracts with the Government to seek evidence of purported bad faith with respect to the contract relevant here would license sweeping discovery into *irrelevant* matters." ECF 52 at 2 (emphasis added).

Plaintiff has adequately pled bad faith as a defense to the default termination.  ECF 43, ¶¶ 67-171.  Prior to the time when Mr. Christian Solinsky became the contracting officer on Plaintiff's projects in Israel, Plaintiff was a well-established and successful contractor for USACE in Israel. ECF 43, ¶¶ 1, 68-69.  However, once Mr. Solinsky took over contracting officer responsibilities for Plaintiff's contracts, to include Nevatim and Navy Kitchen, Defendant's administration of those contracts deteriorated. *Id.*, ¶ 70.

Plaintiff alleged that Mr. Solinsky "put a plan into place that was designed to put Plaintiff out of business when it came to performing work in Israel." *Id.*, ¶ 71.  In the paragraphs that followed, Plaintiff provided background explaining how Plaintiff, in response to Defendant's purported concerns regarding Plaintiff's ongoing projects, including Nevatim and Navy Kitchen, provided Mr. Solinsky and his team with information on its efforts to continue progressing the work and resolving any outstanding issues with these projects. *See Id.*, ¶¶ 74-78.  Plaintiff then detailed correspondence issued by Defendant requiring Plaintiff's responses to a succession of Cure Notices and Show Cause Letters across Plaintiff's projects, *Id.*, ¶¶ 79-82, and alleged that this conduct "was in furtherance of a coordinated and programmatic assault on the Plaintiff designed to injure [Plaintiff] by putting the company out of business in Israel or anywhere within the jurisdiction of the [USACE's] Europe District." *Id.*, ¶ 82.

Plaintiff also alleged that USACE timed cure notices (and Plaintiff's responses thereto) to overlap with one another to maximize disruption to Plaintiff during the holiday season and that such actions were carried out in bad faith. Id. at ¶ 117. Plaintiff further alleged that its responses to cure notices issued by USACE on these projects as well as a show cause letter were not responded to or were ignored entirely. Id. at ¶¶ 113-115. As stated in the complaint, "Although the Ramon termination notice was couched in terms of failure to meet the contract completion date, failure to make sufficient progress, and alleged quality control issues, these were stated as a pretext for the actual reason that the Contracting Officer terminated Oxford – to put the company out of business." *Id.*, ¶ 90.

Documents from the MOD regarding Nevatim and Navy Kitchen are relevant because the MOD, as the end-user of these projects, and in contact with their USACE counterparts throughout the duration of these projects, is in a unique position to provide relevant evidence of USACE's administration of the contracts and general treatment of, and attitude towards, Plaintiff. MOD documents are similarly relevant to whether USACE personnel were acting consistent with the interests of the MOD in the execution of the projects or whether MOD believed USACE was acting in the interest of an alternative agenda, and if so, how. Internal MOD correspondence is also relevant to whether the MOD questioned USACE decision-making and actions in contravention of MOD guidance or instruction. Furthermore, MOD documents concerning Nevatim and Navy Kitchen are relevant to whether the MOD memorialized information relevant to Plaintiff's bad faith allegation that USACE did not convey to the MOD in correspondence. In the main, MOD documentation on Nevatim and Navy Kitchen is relevant to whether USACE demonstrated a pattern across the subject contracts of taking actions not based in contract, but instead motivated by the alleged intent to injure Plaintiff.

8

In support of its contention of irrelevancy, Defendant plucks isolated statements from the complaints filed in this matter to downplay the impact of the convenience terminations ultimately agreed to on Nevatim and Navy Kitchen. *Id*. For example, Defendant points to a statement in the complaint that terminations for the government's convenience at Nevatim and Navy Kitchen did not place a black mark on Plaintiff's performance rating. *See id*; ECF 43, at ¶ 85. The Defendant passes over that the contracting officer originally terminated Nevatim for default and then laid the groundwork for a default termination at Navy Kitchen, ECF 43, at ¶¶ 79-80, and, in doing so, misses the point. Terminations, whether for default or for the convenience of the government, result in the contractor's removal from the project – a step toward the ultimate desired outcome of the contracting officer (to rid the European District of Plaintiff). And, as alleged, Plaintiff agreed to convenience terminations on Nevatim and Navy Kitchen under the contracting officer's threat of default. *Id.*, ¶ 344. In any event, the relevancy of the MOD's documents on Nevatim and Navy Kitchen to the subject litigation is not those projects' ultimate status, but whether the contracting officer's administration of all three projects was carried out in a manner at odds with the position of the MOD, and at odds with fundamental fairness in government contracting.

CONCLUSION

Defendant has not claimed, let alone established, a privacy or privilege interest in documents of the MOD pertaining to Plaintiff's Nevatim and Navy Kitchen projects. As such, Defendant does not have standing to oppose the scope of the Letter of Request. Even if Defendant could establish such an interest or privilege, it cannot bring a claim that the Letter of Request is unduly burdensome to the MOD. Furthermore, Defendant has not shown that the documents are not relevant to Plaintiff's defense of bad faith. For these and all of the reasons

discussed above, Plaintiff respectfully requests that the Court include the MOD's documents as to Nevatim and Navy Kitchen in the Letter of Request.

Respectfully submitted,

Dated: May 16, 2025
/s/ Michael H. Payne
Michael H. Payne, Esquire
Cohen Seglias Pallas Greenhall
& Furman PC
1600 Market Street,
32nd Floor
Philadelphia, PA 9103
Tel: 215-564-1700
Fax: 267-238-4456
Email: mhp@cohenseglias.com
Counsel for Oxford Federal LLC

Co-Counsel:
Stephen D. Tobin, Esquire
Cohen Seglias Pallas Greenhall & Furman PC