# In the United States Court of Federal Claims

| | |
|---|---|
| OXFORD FEDERAL, LLC,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | No. 23-cv-0288<br>(Filed: November 2, 2026) |

Michael H. Payne, Cohen Seglias Pallas Greenhall & Furman PC, Philadelphia, PA, for Plaintiff. With him on the briefs was Stephen D. Tobin.

Matthew J. Carthart, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant. With him on the briefs were Yaakov M. Roth, Principal Acting Assistant Attorney General; Patricia M. McCarthy, Director; and Douglas K. Mickle, Acting Deputy Director.

## MEMORANDUM OPINION

Meriweather, Judge.

This dispute arises from the termination of a construction contract. Plaintiff Oxford Federal, LLC ("Oxford") asserts various claims against the United States pertaining to the circumstances that led to the termination. The United States seeks partial dismissal of Count VII of the amended complaint, which raises a claim for costs arising from an alleged constructive change to the contract. The United States contends that Oxford failed to plausibly allege a constructive change. Having reviewed the pleadings, the parties' briefs,[1] and the relevant law, and for the reasons explained below, the Court **DENIES** the United States' Motion to Dismiss.

[1] This opinion is based on the following filings: 2d Am. Compl., ECF No. 43 ("SAC"); Def.'s Mot. to Dismiss, ECF No. 45 ("Mot."); App. to Mot., ECF No. 45-1 ("App'x"); Pl.'s Opp'n to Mot., ECF No. 46 ("Opp'n"); Def.'s Reply in Supp., ECF No. 50 ("Reply"). Throughout, page citations to documents in the record refer to the document's original pagination, unless the page is designated with an asterisk (e.g., *1), in which case the reference is to the pagination assigned by PACER/ECF.

## BACKGROUND[2]

In 2019, the United States Army Corps of Engineers ("USACE" or "Corps") awarded Contract No. W912GB19C0016 ("Contract") to Oxford for the design and construction of facilities for the Israeli Ministry of Defense. *See* SAC ¶¶ 1–2, 18–23. The Contract explicitly incorporates multiple clauses from the Federal Acquisition Regulations, 48 C.F.R. §§ 1.000 *et seq.* ("FAR"), including FAR 52.243-4. *See* Ex. 1 at A15–A17, A31–A32. In relevant part, FAR 52.243-4, as incorporated into the Contract, provides the following guidelines for changes:

> (a) The Contracting Officer may, at any time, without notice to the sureties, if any, by written order designated or indicated to be a change order, make changes in the work within the general scope of the contract, including changes--
> (1) In the specifications (including drawings and designs);
> (2) In the method or manner of performance of the work;
> (3) In the Government-furnished property or services; or
> (4) Directing acceleration in the performance of the work.
> (b) Any other written or oral order (which, as used in this paragraph (b), includes direction, instruction, interpretation, or determination) from the Contracting Officer that causes a change shall be treated as a change order under this clause; provided, that the Contractor gives the Contracting Officer written notice stating
> (1) the date, circumstances, and source of the order and
> (2) that the Contractor regards the order as a change order.
> (c) Except as provided in this clause, no order, statement, or conduct of the Contracting Officer shall be treated as a change under this clause or entitle the Contractor to an equitable adjustment.
> (d) . . . [N]o adjustment for any change under paragraph (b) of this clause shall be made for any costs incurred more than 20 days before the Contractor gives written notice as required. . . .

*Id.* at A31–A32.

---

[2] As this case is at the motion-to-dismiss stage, this Opinion recites and assumes the truth of the factual allegations in the Complaint. *See Gen. Mills Inc. v. Kraft Foods Glob., Inc.*, 487 F.3d 1368, 1371 n.1 (Fed. Cir. 2007); *Cotter Corp. (N.S.L.) v. United States*, 165 Fed. Cl. 138, 145 (2023), *rev'd on other grounds*, *Cotter Corp., N.S.L. v. United States*, 127 F.4th 1353 (Fed. Cir. 2025). Courts may also rely on any exhibits attached to a motion to dismiss that are "incorporated by reference or integral to the claim." *Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1306 (Fed. Cir. 2015). In this case, the United States attaches the underlying contract and the December 16, 2021, letter that forms the basis of Oxford's Count VII constructive-change claim. *See* Contract No. W912GB19C0016, App'x at A1–A69 ("Ex. 1"); Dec. 16, 2021, Letter, App'x at A70–A73 ("Ex. 2"). Oxford does not oppose the Court's consideration of those documents under these circumstances—indeed, Oxford cites those exhibits multiple times in its opposition. *See* Opp'n at 2, 6, 8–9, 11, 12.

The completion date for the Contract was December 19, 2020. SAC ¶ 24. The Corps' Contracting Officer expressed concern about delays when Oxford fell behind schedule due to restrictions related to the Covid-19 pandemic. *See id.* ¶¶ 26–35.

On December 16, 2021, the Corps issued a "Suspension of Work" letter to Oxford ("the Letter"). *Id.* ¶ 344; *see also* Ex. 2. Citing deficient concrete works, the Contracting Officer effectively terminated two of Oxford's quality control ("QC") employees and directed Oxford "to suspend all concrete construction works" at the relevant site "pursuant to FAR Clause 52.242-15."[3] Ex. 2 at A71. It further directed that the suspension of work would remain in effect until Oxford submitted a plan to implement its corrective actions and its quality control plan and Oxford's "QC Manager and QC Civil positions are replaced and approved by USACE." *Id.* It continued:

> USACE is extremely concerned by Oxford's immediate failure to adhere to their corrective action plan, their quality control plan, and the terms and conditions of the contract. USACE seeks immediate intervention by the surety to address the increasing risk of contractor failure. These repetitive failures of both workmanship and management seriously endanger successful performance and delivery of contract works.

*Id.* at A71–A72.

Oxford involved Liberty Mutual Surety ("Surety") to address the issues raised in the Letter. SAC ¶ 344. The Surety engaged Chris Herron, an outside construction consultant. *Id.* ¶ 345. Thereafter, the Contracting Officer and other Corps personnel "often communicated with Mr. Herron directly to discuss material aspects of the work without the participation or prior knowledge of Oxford." *Id.* ¶ 346. This resulted in multiple site visits to Israel and extensive consultation services. *Id.* ¶¶ 349–50. Oxford paid $115,762.50 to the Surety for its work and Mr. Herron's assistance. *Id.* ¶¶ 352–53.

The Contracting Officer issued a Cure Notice on December 30, 2021. *See id.* ¶ 36. On March 1, 2022, the Corps terminated the Contract for default. *See id.* ¶ 51. Oxford filed suit almost a year later. *See* Compl., ECF No. 1. Oxford filed a Second Amended Complaint on February 5, 2025, asserting for the first time that the Letter imposed a constructive change by requiring that the Surety intervene at an increased cost to Oxford ("Count VII"). *See* SAC ¶¶ 340–53. The United States moves to dismiss Count VII for failure to state a claim. *See* Mot. at 2. The motion is fully briefed and ripe for consideration.[4]

---

[3] This appears to be an erroneous invocation of FAR 52.242-14 "Suspension of Work (APR 1984)," which is incorporated into the Contract by reference. *See* Ex. 1 at A16. Instead, FAR 52.242-15 is titled "Stop-Work Order," which is not explicitly incorporated here.

[4] The Court stayed the case to allow the parties to pursue mediation. Order, ECF No. 63. The parties were unable to reach a settlement. Joint Status Report and Proposed Further Proceedings, ECF No. 66 at 1. The motion is therefore again ripe for resolution.

## LEGAL STANDARD

When reviewing a Rule 12(b)(6) motion to dismiss, the Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (cleaned up) (quoting *Twombly*, 550 U.S. at 555). When evaluating a motion to dismiss, "the court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in favor of the plaintiff." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1347 (Fed. Cir. 2018). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must also "consider the complaint in its entirety," including any "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). "The court's task in considering a motion to dismiss for failure to state a claim is not to determine whether a plaintiff will ultimately prevail, but 'whether the claimant is entitled to offer evidence to support the claims.'" *Doe v. United States*, 95 Fed. Cl. 546, 554 (2010) (cleaned up) (quoting *Chapman L. Firm Co. v. Greenleaf Constr. Co.*, 490 F.3d 934, 938 (Fed. Cir. 2007)).

## DISCUSSION

The pending motion concerns Count VII of Oxford's Second Amended Complaint, which raises a claim that the Letter initiated a constructive change to the contract for which Oxford must be compensated. *See* Mot. at 2; SAC ¶¶ 340–53. If the Government "requires a constructive change in a contract, the Government must fairly compensate the contractor for the costs of the change." *Aydin Corp. v. Widnall*, 61 F.3d 1571, 1577 (Fed. Cir. 1995). "To demonstrate a constructive change, a plaintiff must show (1) that it performed work beyond the contract's requirements, and (2) that the additional work was ordered, expressly or impliedly, by the government." *BGT Holdings LLC v. United States*, 984 F.3d 1003, 1012 (Fed. Cir. 2020). The appropriate remedy for constructive change is typically "an equitable adjustment under the 'changes' provision of the contract." *Id.* at 1013 (quoting *NavCom Def. Elecs., Inc. v. England*, 53 F. App'x 897, 900 (Fed. Cir. 2002)).

The United States argues that Oxford failed to submit notice of the alleged change and that the complaint's factual allegations are insufficient to support a cognizable claim of constructive change. *See* Mot. at 7. Oxford counters that it is excused from providing notice because the Contracting Officer "knew, or should have known, that the immediate intervention of Oxford's surety at the government's behest was not a contract requirement." Opp'n at 1. Because no clause in the Contract authorized such an intervention, Oxford contends that the Letter constitutes a constructive change. *See id.* at 9–12. As explained further below, the Court finds the United States' arguments unpersuasive and denies the motion to dismiss.

## I. Oxford Sufficiently Alleges an Exception to the Notice Requirement Codified at FAR 52.243-4.

It is undisputed that Oxford did not submit a formal notice of the constructive change and ensuing costs "within 20 days of the alleged change" as required under the Contract's Changes clause and FAR 52.243-4. *See* Mot. at 7; Opp'n at 4–5. FAR 53.243-4(d) is explicitly incorporated into the Contract and provides, in relevant part, that "no adjustment for any change," as defined in FAR 52.243-4(b), "shall be made for any costs incurred more than 20 days before the Contractor gives written notice as required." Ex. 1 at A31–32 (incorporating 48 C.F.R. § 52.243-4(d)(2007)). Notice provisions in a contract's changes clause serve the important purpose of "differentiat[ing] requests the contractor views as outside the contract from those it deems contemplated by the contract," so that the United States "will not be surprised by money claims later" and is able to "address demands for more money when it might yet avoid them." *K-Con Bldg. Sys., Inc. v. United States*, 778 F.3d 1000, 1010 (Fed. Cir. 2015).

Oxford's failure to provide notice is not the end of the analysis, as the United States acknowledges. *See* Mot. at 7 (quoting *K-Con*, 778 F.3d at 1010). Courts have recognized several exceptions that "weigh[] against strict enforcement of the time limit." *Id.* (citing *Powers Regulator Co.*, GSBCA No. 4668, 80–2 BCA ¶ 14,463 (Apr. 30, 1980); *Hoel–Steffen Const. Co. v. United States*, 456 F.2d 760, 767–68 (Ct. Cl. 1972)). One such exception is where the United States has "actual or imputed notice of circumstances giving rise to the claim." *Nova Grp./Tutor-Saliba v. United States*, 125 Fed. Cl. 469, 474 (2016) (citing *K-Con*, 778 F.3d at 1010-11). The parties dispute whether that exception applies here. *See* Mot. at 7; Opp'n at 5.

The United States argues that because Oxford fails to "allege that the United States contemporaneously understood that Oxford considered the involvement of the surety to be a change," it does not qualify for any exception to the notice clause. Mot. at 7. That overstates the specificity with which Oxford must plead its constructive change claim. "[T]he Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met" at the pleading stage. *Nalco Co*, 883 F.3d at 1350 (quoting *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1335 (Fed. Cir. 2012)). Rather, to survive a motion to dismiss, a plaintiff need only plead sufficient "factual content that allows the court to draw the *reasonable inference* that the defendant is liable." *Iqbal*, 556 U.S. at 678 (emphasis added).

Importantly, Oxford alleges that the Contracting Officer was not only aware of the Surety's intervention but "often communicated with Mr. Herron directly to discuss material aspects of the work." SAC ¶ 346. Oxford states that it "adamantly disagreed with the basis of the Suspension of Work" at the time. *Id.* ¶ 344. And Oxford alleges that "USACE's decision to terminate Oxford was made well in advance" of the Letter, *see id.* ¶¶ 344, 350, 353, that the Contracting Officer acted in "bad faith" by "[l]uring Oxford into the belief that taking further effort to progress the project by incurring additional and significant expenses all while knowing that an immutable decision to default was already in place," and that a change was made to the Contract in "requiring that the Surety actively intervene in the Contract at an increased cost to Oxford," even though "no provision permits the government to require such involvement." *Id.* ¶ 353. From such factual allegations, the Court could reasonably infer that the Contracting

Officer, and by extension the United States, knew or should have known that Oxford regarded the Letter as a change.

The United States' insistence that the alleged change is nothing more than "surety communications that are contemplated by FAR 49.402–3(e)(2)," Mot. at 8, does not foreclose an inference that USACE knew or should have known that the Letter was a change. As Oxford notes, FAR 49.402-3(e)(2)[5] is "a clause not even mentioned" in the Letter. Opp'n at 7. A reasonable factfinder could infer, as Oxford posits, that "USACE was, or should have been, aware that its request for [the Surety]'s active intervention in the project was not contractually sanctioned." *Id.* at 7; *see also* Ex. 2 at A71 (citing FAR 52.242-15).

At this stage, the question is not whether Oxford "will ultimately prevail, but 'whether [it] is entitled to offer evidence to support [its] claims.'" *Doe*, 95 Fed. Cl. at 554 (cleaned up). The amended complaint clears that low threshold. Oxford may develop and present evidence to show that a recognized exception to the notice requirement excuses its failure to supply timely notice of the alleged change.[6]

## II. Oxford Plausibly Alleges the Elements of a Constructive Change Claim.

The United States also argues that Oxford fails to state a cognizable claim for constructive change. *See* Mot. at 7. Oxford counters that the Letter requested the Surety's active intervention, which exceeded the scope of and therefore constructively changed the contract. *See* Opp'n at 10–11. At this procedural stage, Oxford need only plead facts that plausibly establish the elements of a constructive change claim. It does not have to show that its interpretation of the Letter is the only or best interpretation. *See Chapman L. Firm Co.*, 490 F.3d at 938. The proper interpretation of the contract, however, presents a question of law. *See Bell/Heery v. United States*, 739 F.3d 1324, 1330 (Fed. Cir. 2014).

When presented with a claim for constructive change, a court's "analysis begins with the language of the contracts," *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 826 (Fed. Cir. 2010), which "is read in accordance with its express terms and the plain meaning thereof," *C. Sanchez & Son, Inc. v. United States*, 6 F.3d 1539, 1543 (Fed. Cir. 1993). A court will not rewrite the contract and insert words the parties never agreed to. *See id.* Here, the pertinent question is whether the contract allowed the Government to request the Surety's immediate intervention under the then-extant circumstances.

The United States has not identified a provision of the Contract that expressly authorizes USACE to request that the Surety actively intervene in Oxford's fulfillment of the contract. The

[5] FAR 49.402-3(e)(2) requires "written notification to the surety" when a default termination appears imminent.

[6] Oxford also argues that its failure to provide timely notice should be excused because it would have been futile to do so. *See* Opp'n at 5, 8–9. The United States challenges whether a futility exception exists in this context. *See* Reply at 3–4. Having found another exception applicable, it is unnecessary for the Court to decide whether to recognize a futility exception.

Letter requested "immediate intervention by the surety to address the increasing risk of contractor failure." Ex. 2 at A71; *see also* SAC ¶ 344. Thereafter, the Surety hired an outside construction consultant, with whom the Contracting Officer communicated directly on multiple occasions. *See* SAC ¶¶ 345–46. The construction consultant visited the site and performed other services, incurring $115,762.50 in costs. *See id.* ¶¶ 349, 352–53. The Contract contains no language that contemplates that the Surety will become involved in this manner.

The United States characterizes the Letter as an implementation of the surety notification process contemplated in FAR 49.402-3,[7] which provides that "the contracting officer shall provide a written notification to the surety" when termination for default appears imminent. FAR 49.402-3(e)(2). Specifically, the United States contends that no constructive change occurred, and Oxford simply complains of "a premature surety notification." Mot. at 7–9; Reply at 5. There are several problems with this argument. First, the Contracting Officer did not cite FAR 49.402-3 in the Letter. *See* Ex. 2 at A71–A72. Indeed, the United States does not cite the Letter or a specific contract provision that expressly includes FAR 49.402-3. *See* Mot. at 7–8. Second, the Letter provided no indication of an imminent default. *See* Opp'n at 9–10; Ex. 2 at A71–A72. Indeed, the Contracting Officer did not send a Cure Notice until December 30, 2021. *See* SAC ¶ 36. Finally, even if the Contracting Officer intended to rely on FAR 49.402-3(e)(2), the Letter requests "immediate *intervention*," Ex. 2 at A71 (emphasis added), which is distinct from *notification* of imminent default. Consequently, it is far from clear that FAR 49.402-3 is relevant, let alone dispositive.

Finally, the United States argues that it "cannot be held liable for decisions made by Oxford's surety" to hire an outside consultant. Mot. at 8. The only case cited in support of this argument is *American Line Builders, Inc. v. United States*, 26 Cl. Ct. 1155 (1992). *See id.* at 8–9; Reply at 6. But that case merely stands for the proposition that a claim for constructive change requires a showing "that the cost increases were the direct and necessary result of the change." *Am. Line Builders*, 26 Cl. Ct. at 1180 (quoting *Sterling Millwrights, Inc. v. United States*, 26 Cl. Ct. 49, 72 (1992)). Nor does that case involve the pleading standards governing the pending motion to dismiss—the *American Line* decision was issued after a ten-day trial. *Id.* at 1159. Issues such as causation typically are not resolved until summary judgment or trial. *See Smith v. Hope Vill., Inc.*, 481 F. Supp. 2d 172, 185 (D.D.C. 2007) ("In most cases, the existence of proximate cause is a question of fact for the jury." (cleaned up)); *cf. Bryant v. Pepco*, 730 F. Supp. 2d 25, 31 (D.D.C. 2010) (acknowledging in the employment-discrimination context that "causation is often the most difficult element to show in advance of discovery," so courts typically rely on temporal proximity to determine sufficiency of pleading at the motion-to-dismiss stage). Here, Oxford alleges that the Contracting Officer ordered the Surety's intervention, without which Oxford would not have incurred additional costs. *See* Ex. 2 at A71; SAC ¶¶ 342–53. Although the Contracting Officer did not explicitly order Oxford and the Surety to hire a consultant, it is unclear under the circumstances what other form of "intervention" was contemplated. Circumstances surrounding the Letter and its intended

[7] The United States does not dispute that the Contracting Officer's Letter "seek[ing] immediate intervention by the surety," Ex. 2 at A71, could not reasonably be interpreted as an "other written or oral order" for purposes of a change under FAR 52.243-4(b).

outcome are prime topics for discovery. Therefore, the Court denies the United States' partial motion to dismiss.

## CONCLUSION

For the reasons set forth above, the Court **DENIES** the United States' Motion to Dismiss, ECF No. 45.

ROBIN M. MERIWEATHER
Judge